UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RUSSELL PEARSON,

          Petitioner,

   v.

PAT GLEBE,

          Respondent.

CASE NO. C10-5751BHS

ORDER ADOPTING REPORT AND RECOMMENDATION

This matter comes before the Court on the Report and Recommendation ("R&R") of the Honorable J. Richard Creatura, United States Magistrate Judge (Dkt. 15) and Petitioner Russell Pearson's ("Pearson") objections to the R&R (Dkt. 16). The Court has reviewed the R&R, Pearson's objections, and the remainder of the file and hereby adopts the R&R for the reasons stated herein.

**I. STATE CONVICTION AND FEDERAL PROCEDURAL HISTORY**

On August 16, 2006, Pearson was convicted by jury of second degree felony murder in the Pierce County Superior Court for the State of Washington. Dkt. 10 (relevant state court records), Exh. 1. On September 15, 2006, Pearson was sentenced to 215 months with a 60-month gun enhancement. *Id.*

On October 14, 2010, Pearson filed a petition for writ of habeas corpus claiming that the state violated his Fifth Amendment right to be free from double jeopardy. Dkt. 1. On April 11, 2011, Judge Creatura issued the R&R and recommended that the Court deny

ORDER - 1

the petition and deny a certificate of appealability. Dkt. 15. On April 15, 2011, Pearson filed objections to the R&R. Dkt. 16. On April 26, 2011, the state responded. Dkt. 17.

## II. STATE COURT PROCEDURAL AND FACTUAL BACKGROUND

In denying Pearson's direct appeal, the Washington State Court of Appeals summarized the facts and prior procedural history as follows:

> On January 8, 2000, Pearson and James Davis arrived at Rodney Klum's apartment. Davis had a shotgun and Pearson had a handgun. Earlier that evening, Klum had punched Pearson in the mouth and taken a pair of night-vision goggles. Pearson, determined to get the goggles back, went to Davis for help and told Davis to bring his shotgun.
> When Pearson and Davis knocked on the door at Klum's apartment, another man, Matthew Carr, opened the door. Also at Klum's apartment were Jerry Kohl, Tamie Bruland, and Bruland's five-year-old son, Michael. Pearson and Davis asked for Klum. Klum was in the back of the home, talking on the telephone.
> When Klum emerged from a back room, Davis confronted Klum and pulled the shotgun out of his pants, released the safety, and pointed it at Klum. Davis and Pearson declared that they had come to shoot Klum in the foot or leg. Davis saw that Klum had a paintball pistol in his waistband and told Klum to drop the pistol or he would shoot Klum's foot off.
> After a brief exchange, Davis raised the shotgun to Klum's head and shoved it into Klum's face. Davis testified that Klum reached for the shotgun and a "tug of war" ensued. 11 Report of Proceedings (RP) at 1417. The shotgun fired into Klum's head, killing him instantly.
> In May 2000, the State charged Pearson with first degree murder, or, in the alternative, second degree felony murder during the commission or attempted commission of either an assault or a robbery (each with a firearm enhancement) and one count of first degree unlawful possession of a firearm. A jury acquitted him on the first degree murder charge, but it convicted him of second degree murder by means of assault (with a firearm enhancement) and unlawful possession of a firearm. Pearson was sentenced to a total of 314 months in prison.
> This court granted Pearson's personal restraint petition in April 2005, ordering vacation of his felony murder conviction and sentence under *In re the Pers. Restraint of Andress*, 147 Wn.2d 602, 606, 56 P.3d 981 (2002), which held that assault may not serve as the predicate crime for second degree felony murder under former RCW 9A.32.050(1)(b) (1976). Finding that the mandatory joinder issue raised was a factual one, we remanded to the trial court for further proceedings.
> In September 2005, after Pearson's murder conviction was vacated, the State charged Pearson with second degree murder (count I), first degree unlawful possession of a firearm (count II), second degree felony murder during the commission or attempted commission of a residential or second degree burglary (count III), and first degree assault (count IV). Pearson filed a motion to dismiss counts I, III, and IV on the grounds of double jeopardy and mandatory joinder. The trial court held that double jeopardy

ORDER - 2

only acted as a bar to count IV (first degree assault). It therefore dismissed count IV, but denied Pearson's motion to dismiss counts I and III.

The trial court entered an order clarifying its earlier order vacating Pearson's sentence, which stated that the vacation applied only to Pearson's second degree murder conviction, not to his first degree unlawful possession of a firearm conviction. The trial court therefore severed count II from counts I and III (as count II was already adjudicated) and ordered that trial proceed on counts I and III.

\*\*\*

A jury found Pearson guilty of felony murder and found by special verdict that he was armed with a firearm. The trial court sentenced Pearson to 215 months (in the middle of the standard range) with a 60-month firearm enhancement, and it ordered that Pearson serve this sentence consecutive to a custodial assault conviction he received in 2000 following the 2000 murder conviction.

Dkt. 10, Exh. 2 at 2-5.

In Pearson's first trial, the instruction given to the jury regarding consideration of the offenses charged reads in part as follows:

When completing the verdict forms, you will first consider the crimes of Murder in the First Degree or in the alternative, Murder in the Second Degree by means of Assault in the Second Degree. If you unanimously agree on a verdict, you must fill in the blank provided in verdict form A or A-1 the words "not guilty" or the word "guilty", according to the decision you reach.

If you find the defendant guilty on verdict form A, do not use verdict form A-1. If you find the defendant not guilty on verdict form A, fill in the blank provided in verdict form A-1 the words "not guilty" or the word "guilty," according to the decision you reach.

If you do not find the defendant guilty of the crimes of Murder in the First degree or Murder in the Second Degree by means of Assault Second Degree, or you are unable to reach a verdict, you must consider the lesser included crimes of Murder in the Second Degree. If you unanimously agree on a verdict, fill in the blank provided in verdict form B the words "not guilty" or "guilty" according to the decision you reach.

If you find the defendant guilty of verdict form B, do not use verdict forms C and D. If you find the defendant "not guilty" of Murder in the Second Degree, or you are unable to reach a verdict, you must consider the lesser included crime of Manslaughter in the Second Degree.

Dkt. 10, Exh. 4, Instruction No. 42.

In his personal restraint petition, Pearson presented a double jeopardy claim to the Washington Court of Appeals, which reasoned and concluded as follows:

Pearson argues that because the first jury left blank the verdict form for second degree intentional murder that jury impliedly acquitted him of

ORDER - 3

that charge, so his second trial on that charge violated his protection against double jeopardy. *State v. Linton*, 156 Wn.2d 777, 789, 132 P.3d 127 (2006). *State v. Schoel*, 54 Wn.2d 388, 394, 341 P.2d 481 (1959). However, a blank verdict form does not always result in an implied acquittal. It only does so if the blank verdict form refers to a greater offense, if the jury is not given the "unable to agree" instructions, and the jury finds the defendant guilty of a lesser offense. *State v. Wright*, 165 Wn2d 783, 792, 203 P.3d 1207 (2009); *State v. Ervin*, 158 Wn.2d 746, 758-59, 147 P.3d 567 (2006). In his first trial, the court gave the jury "unable to agree" instructions, which instructed the jurors to proceed to consider a lesser included crime only if they acquitted Pearson on the greater charge or were unable to agree on the greater charge. The first jury acquitted Pearson of first degree murder and then proceeded to consider the alternative charge of second degree felony murder. They found him guilty of that charge and so, under the instructions they had been given, did not proceed to consider the lesser included crime of second degree intentional murder. Thus, the blank verdict form for that charge did not constitute an implied acquittal. His second trial on that charge did not violate Pearson's right against double jeopardy.

Dkt. 10, Exh. 31 at 2.

After the Washington Court of Appeals denied his petition, Pearson sought discretionary review form the Washington Supreme Court. In denying review, the Commissioner reasoned and concluded as follows:

> [Pearson] mainly argues that double jeopardy principles barred his second trial for second degree intentional murder and second degree felony murder predicated on burglary. But the vacation of Mr. Pearson's original conviction under *Andress* did not terminate jeopardy so as to categorically preclude retrial for intentional murder or some other form of felony murder. *State v. Wright*, 165 Wn.2d 783, 795-96, 203 P.3d 1027 (2009). The question then is whether the jury in the first trial impliedly acquitted Mr. Pearson of second degree intentional murder. *Id*. at 796-97. It plainly did not. The jury was expressly told to consider second degree intentional murder if it acquitted Mr. Pearson of first degree intentional murder and second degree felony murder or was unable to agree on those charges. Since the jury found Mr. Pearson guilty of second degree felony murder, it had no occasion to consider second degree intentional murder and properly left blank the verdict form for that alternative.
> Mr. Pearson complains that the instructions failed to explicitly tell the jury not to consider second degree intentional murder if it found Mr. Pearson guilty of first degree intentional murder or second degree felony murder. But that is the only sensible reading of the instructions. The trial court told the jury that if it acquitted Mr. Pearson of first degree murder and second degree felony murder, or was unable to agree on those charges, it "must consider the lesser included crime of Murder in the Second Degree" as related in verdict form B (second degree intentional murder). The instructions plainly conveyed to the jury that it was not to consider second degree intentional murder once it found Mr. Pearson guilty of second degree felony murder.

ORDER - 4

> Since the jury did not acquit Mr. Pearson of second degree intentional murder, jeopardy on that charge continued.

Dkt. 10, Exh. 33 at 2-3.

## III. DISCUSSION

Upon receiving proper objections to a report and recommendation, a "district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

In this case, Pearson asserts two objections to the R&R, which are as follows:

> First, the [R&R] fails to consider the double jeopardy implications when a jury considers a charge, but is discharged without a verdict and without a manifest necessity (deadlocked deliberations, for example).
> Second, the [R&R] misreads the instructions as a whole when it concludes Pearson's "jury would only have considered the crime of second degree intentional murder if they found the defendant not guilty of first degree murder or felony second degree murder." [R&R], p. 5.

Dkt. 16 at 2. These objections effectively cover Pearson's entire request for relief and, therefore, the Court will review the R&R de novo.

### A. Habeas Review and Double Jeopardy

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the state court's determination of a mixed question of law and fact such as this is entitled to deference. *Brazzel v. Washington*, 491 F.3d 976, 983 (9th Cir. 2007). Thus, the Court may not grant Pearson relief unless the state courts' failure to grant relief was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Under the first clause of § 2254(d)(1), "a state-court decision is contrary to [Supreme Court] precedent if the state court arrives at a conclusion opposite to that reached by th[e] Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Court's]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

ORDER - 5

In this case, Pearson asserts that the state court decision was contrary to Supreme Court case law. Dkt. 12 at 10. Pearson, however, fails to elaborate on this argument or provide cases in support of this argument. Contrary to Pearson's position, the Ninth Circuit has stated that "[n]o Supreme Court case addresses precisely . . . an 'unable to agree' jury instruction, so the state court's treatment of the jury's silence cannot be characterized as 'contrary to' federal law." *Brazzel*, 491 F.3d at 984. The Court is unaware of, and the parties have failed to cite, a Supreme Court case that considered the instant issue of law or one that involved facts materially indistinguishable from the facts presented in this petition.

Accordingly, the Court shall only consider the second clause of § 2254(d)(1) and must determine whether the state courts' decisions "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." *Id.* The Supreme Court has held that under the

> 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*William*s, 529 U.S. at 411; *see Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold."). Moreover, in making this inquiry, the federal court "should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409.

In this case, Pearson claims that the state violated his Fifth Amendment right to be free from double jeopardy by retrying him for intentional murder. Dkt. 1. The parties agree that the controlling Supreme court cases are *Green v. United States*, 355 U.S. 184 (1957), and *Price v. Georgia*, 398 U.S. 323 (1970). *See* Dkt. 1 at 13 (the "case at hand . .

. represents a straightforward application of *Green* and *Price*") and Dkt. 9 at 20-24 (analysis and application of *Green* and *Price*).

In *Green*, "the jury was authorized to find him guilty of either first degree murder (killing while perpetrating a felony) or, alternatively, of second degree murder (killing with malice aforethought)." *Green*, 355 U.S. at 189-190. The Court found that "[w]hen given the choice between finding [the defendant] guilty of either first or second degree murder [the jury] chose the latter." *Id*. at 190. The defendant successfully appealed his conviction, the state retried him on both first and second degree murder, and the second jury returned a verdict of guilty of first degree murder. *Id*. at 186. With regard to the defendant's double jeopardy claim, the Court reasoned and concluded as follows:

> [T]he [first] jury was dismissed without returning any express verdict on [the first degree murder] charge and without Green's consent. Yet it was given a full opportunity to return a verdict and no extraordinary circumstances appeared which prevented it from doing so. Therefore it seems clear, under established principles of former jeopardy, that Green's jeopardy for first degree murder came to an end when the jury was discharged so that he could not be retried for that offense. In brief, we believe this case can be treated no differently, for purposes of former jeopardy, than if the jury had returned a verdict which expressly read: "We find the defendant not guilty of murder in the first degree but guilty of murder in the second degree."

*Id*. at 191 (internal citation omitted).

In *Price*, the defendant faced trial on an indictment for the offense of murder. *Price*, 398 U.S. at 324. The jury returned a verdict of guilty to the lesser included crime of voluntary manslaughter, and Price successfully appealed his conviction. *Id*. The state retried the defendant under the original indictment, and the second jury returned the same verdict that the defendant was guilty of voluntary manslaughter. *Id*. The Court held that retrial violated the defendant's right to be free from double jeopardy as to the charge of murder. *Id*. at 332. As Pearson correctly states, the "*Price* Court reiterated the two salient features of *Green*'s holding: jury silence amounted to an 'implicit acquittal,' and

*Green*'s first jury 'was given a full opportunity to return a verdict' on the more serious charge." Dkt. 1 at 16 (citing *Price*, 398 U.S. at 328-29).

Now that the Court has set forth the lens of review and the applicable federal law, it turns to Pearson's claim for relief.

**B.     Pearson's Jury Instruction**

In the instant petition, Pearson asserts that the "jury instructions describing the order of deliberations . . . were hardly the model of clarity." Dkt. 1 at 8-9.  Pearson argues that

> the instructions were most likely understood by jurors as permitting consideration of intentional murder after jurors acquitted him of premeditated murder and contemporaneous with their consideration of felony murder.

*Id*. at 10.  Based on the possibility that the jurors may have considered intentional murder, Pearson argues that the jury had ample opportunity to convict him of intentional murder. Dkt. 12 at 6-7.  Pearson concludes that the first jury had a full and fair opportunity to consider intentional murder, the jury's silence on the charge of intentional murder amounted to an "implied acquittal" on that charge, and the state's retrial in 2006 on the same charge of intentional murder violated his right to be free from double jeopardy.  *Id*. at 9-11.

On the other hand, the state bases its position on what it claims the jury actually considered.  For example, the state asserts that the "jury never considered any of the lesser offenses" (Dkt. 9 at 20), the jury "never reached any of the lesser included offenses, including the lesser included offense of second degree intentional murder. The jury never considered this charge, and did not acquit Pearson of this charge." (*Id*. at 21), and the "jury never considered the charge of second degree intentional murder" (*Id*. at 22).  The problem with these assertions, as well as the Washington Court of Appeals finding that the jury "did not proceed to consider the lesser included crime of second degree

intentional murder," is that the record is silent as to what charges the jury actually considered. In fact, the jury was discharged without being polled as to whether it considered intentional murder after, or in conjunction with, considering the charge of felony murder. As the Supreme Court has cautioned, such conclusions as to jury deliberations "require speculation into what transpired in the jury room," an action that courts should "properly avoid" because they are "explorations into the jury's sovereign space." *Yeager v. U.S.*, 129 S. Ct. 2360, 2368 (2009).

The record reflects four indisputable facts: (1) the jury instruction contains no explicit instruction – such as "do not use verdict form B, C, or D" – in the event the jury found Pearson guilty of felony murder on verdict form A-1, (2) the jury instruction included an explicit instruction in the event that they did not find Pearson guilty of premeditated murder or felony murder or if they were unable to reach a verdict as to those alternative charges, (3) the jury returned a guilty verdict on the charge of felony murder, and (4) the jury returned a blank verdict form on the charge of intentional murder. The extent of the jury's deliberations requires speculation and inferences based on these facts. Pearson, however, bears the burden to show that the state courts' decisions that the jury did not have a full and fair opportunity to consider intentional murder was an unreasonable application of established federal law.

The established federal law is based on instructions wherein the juries were explicitly given the choice to consider an offense and a lesser-included offense. After the juries returned a verdict on the lesser included offense and remained silent on the greater offense, they were discharged. The Supreme Court held that the juries' silence as to the greater offense constituted an implied acquittal because the jury gave a full and fair consideration to the greater offense.

In this case, the issue is the mere possibility that the jury considered the lesser-included charge of intentional murder because it was not expressly prohibited from doing

so by the given instruction. Pearson fails to show any indication in the record regarding the probability of this mere possibility. Although they failed to cite any federal law, the Washington courts based their decisions on a finding that there was no possibility the jury considered intentional murder. As such, the Washington courts effectively held that the jury did not give a full and fair consideration to the charge of intentional murder based on the mere possibility that they continued deliberations after reaching a verdict on felony murder. This Court finds that those decisions were neither unreasonable applications of federal law nor objectively unreasonable. In other words, it is not unreasonable to apply *Green* and *Price* to hold that, without any evidence in the record to the contrary, the jury failed to give full and fair consideration to a lesser-included charge upon reaching a verdict on a greater charge. Therefore, Pearson has failed to meet his burden under AEDPA, and the Court denies his petition.

## IV. CERTIFICATE OF APPEALABILITY

A petitioner seeking relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

The Court finds that neither jurists of reason could disagree with the instant resolution of Pearson's double jeopardy claim nor that jurists could conclude the double jeopardy issues presented are adequate to deserve encouragement to proceed further. Therefore, the Court denies Pearson a certification of appealability.

## V. ORDER

Therefore, it is hereby **ORDERED** that:

(1) The R&R is **ADOPTED**;

(2) A Certificate of Appealability is **DENIED**;

(3) The petition is **DENIED**; and

(4) This action is **DISMISSED**.

DATED this 22nd day of June, 2011.

	*[signature]*
	BENJAMIN H. SETTLE
	United States District Judge

ORDER - 11